MARRERO LAND & IMPROVEMENT ASS'N, ET ALS., :

versus

TOWN OF WESTWEGO

**8403**

NO. 8,403

COURT OF APPEAL

PARISH OF ORLEANS

HON. PRENTICE E. EDRINGTON,  JUDGE.

Court of Appeal,
PARISH OF ORLEANS
FILED MAR 27 / 22

**8403**

BY:  WILLIAM A. BELL, JUDGE:

This is a suit instituted by plaintiffs under the provisions of Section 3 of Act 136 of 1898 of the General Assembly of the State of Louisiana, providing that any party in interest may appeal from an ordinance extending the l mits of any city, town or village, if such appeal be presented before the ordinance becomes operative.

The town of Westwego adopted an ordinance on the 30th day of December, 1919, extending its limits, defining its boundaries, and providing for the publication of said ordinance as required by Act 136 of 1898 above referred to; plaintiffs, who are property owners within the area sought to be included in the extension, filed this suit protesting against said ordinance within the time prescribed by law.

The ordinance objected to by the complainants herein, changes the boundaries of the town of Westwego, so as to include within the incorporate limits of said town, the territory described as follows, to wit:

"That part of the Parish of Jefferson, State of Louisiana, commencing at the intersection of the Mississippi River with the prolongation of the eastern or lower line of the Dugues Canal, thence along said eastern or lower line of the Dugues Canal to the point of intersection with the southern boundary of the township line known as T. 13 S R 23 E,S E District of Louisiana west of the Mississippi River, thence along said township line in the westerly direction to a point where said township line intersects the eastern boundary line of the Subdivision known as Salaville, thence along the Eastern line known as Salaville,until it intersects the southern boundary line of the right of way of the Morgan, Louisiana & Texas R.R. & Steamship Co. thence along the southern boundary line of the right of way of the Morgan, Louisiana & Texas R.R. & Steamship Co. until it intersects the line located at Three hundred (300) feet east of the eastern boundary line of Avenue A of the subdivision known as Salaville, thence along the line located at Three Hundred (300) feet east of the eastern line of Avenue A of the River, thence along the Mississippi River to the

2

point of beginning."

There has been filed in the record a blue-print or map, marked "D-I" showing the present town of Westwego, which is comprised within the area marked by the letters "A-B-C-D-V-W-T-S and R." The same map shows the territory sought to be annexed, and is comprised within the area marked by the letters A-B-C-D-Q-E-M-L-N and P, and is outlined in red pencil. (Trans.p.22)

Sec. 4 of Act 136 of 1898, provides that the appeal from the ordinance in proceedings of this nature, shall be by suit in the District Court of the parish where the property is located, and shall be brought against the mayor of the city, town, or village; and that the question for determination by the Court shall be whether the proposed extension or contraction of the corporate limits BE, OR BE NOT, REASONABLE. Complainants, in their petition allege that the proposed extension of the town of Westwego is unreasonable, upon the following alleged grounds of opposition.

> 1st. "That the community which is proposed to annex is largely agricultural in character, and possesses none of the characteristics of a town.
> 2nd. That a large part of said territory is widely separate from the Town of Westwego, and is inaccessible to the territory proposed to be annexed.
> 3rd. Because the territory which is proposed to be annexed has not been laid out as a town and is really nothing but a community composed of small farmers and dairymen.
> 4th. Because the territory which is proposed to be annexed will derive no benefits from the proposed extension and that there will only be added the additional burden of Taxes imposed upon the territory proposed to be annexed with no benefits derived therefrom.
> 5th. That the proposed extension or annexation is unreasonable; and that it is an arbitrary annexation made without the consent of those people residing in the territory proposed to be annexed and is against their will and desire."

The Town of Westwego, through its Mayor, has answered the petition of appeal filed in this proceeding, and

3

particularly avers in response to said petition that the State ordinance is fair, just, reasonable, and legitimate, and that the property included in the proposed extension lies immediately contiguous and adjacent to the present boundary of the town, and is the same nature as property within the present limits of the town, some of which, having been laid off in town lots, and sold as such, and that the annual amount of taxes assessed against the property included in the ordinance, based on the assessment of 1919, will not exceed the sum of $2,000. It is finally averred by the respondent, that the described property proposed to be included in the Town, is in need of police protection and sanitary regulations, and that the land will be greatly improved by a water-work system and electric light system, which the Town is now instituting, and proposes to have constructed; that the proposed extension merely represents the actual growth of the Town of Westwego, and that the inhabitants of the present town and of the territory included in said proposed ordinance, have come to be, virtually one community, or town.

Upon the issues as above presented, the sole question for determination is whether or not the extension as proposed, be, or be not, reasonable. From the judgment of the Trial Court, that the said extension is reasonable, complainants have appealed herein, to this Court. The record before us is most extensive and voluminous, containing considerable testimony, maps, photographs, aeroplane pictures, diagrams and plots, etc., to all of which we have given closest scrutiny and examination. We have particularly considered the reasons for judgment appearing in the record, and upon analysis of same, paralleled with the documentary and oral evidence with which the record is replete, we find ourselves unable to agree with the conclusions of the Trial Court, to the effect that "none of the contentions "of plaintiff are borne out by the evidence, but; on the contrary, "that the proposed extension would be a reasonable one, and one "that ought to be made to allow the proper growth of the entire

Town of Westwego." This cause was submitted to the Court during the month of April, 1921, and the facts as existing at that time going to establish the reasonableness or not of the proposed extension are particularly presented by the testimony of the witness, Mr. Conrad A. Buchler, now one of the counsels for the Town of Westwego, defendant and appellee, and who was, at the time of the adoption of the ordinance, the Mayor of the Town of Westwego, and one of the town officials voting for the extension. This witness, in presenting before the Court the grounds why the proposed extensions were thought by the Town Council reasonable, was forced, on direct examination, as a witness called by complainants herein, to admit that at the time of the enactment of the ordinance, and of the trial of this suit, Westwego had no electric lights of its own, but, on the contrary, was under contract for ten years, lighting to be furnished it from the South New Orleans Light & Traction Company, beginning in October, 1921, thus showing that as a town improvement, the expense of which would have to be borne by the whole Town of Westwego, when and as extended, could not be possible, unless the contract in question could be annulled. It was further admitted by this witness, that no gas or gas plant, or equipment, had ever been used anywhere in Westwego, nor was any contemplated; that the town had no sewerage or water works at the time of the adoption of the ordinance, nor any site for water works planned, within the town as then constituted, but that one was contemplated just outside of the then limits of the Town, there being no available space for same in the Town as then constituted, the proposed new site being designated by him under the letter "X" shown on the blue-print filed in evidence. In this connection, it was stated by the witness, that the erection of a municipal water-works plant being contemplated, there had been voted by the Town people a bond issue of $100,000, this vote being taken after the passing of the

5

ordinance of extending the Town limits, and that nothing had
been done by the Town authorities towards the erection of the
water-works plant because of their inability to sell of negotiate the bonds. He finally admitted "in order to go ahead
with the building of the water-works plant, that another
election, fixing a higher rate of interest on the bonds, would
have to be held, and that ultimately, the intention of the
Town was to use all of the Ferry Franchise of some $40,000
for the completion of this plant." Thus it is shown, that
as to the sewerage and water works for the Town of Westwego,
the matter was in such abeyance as to be nothing else but an
unaccomplished or unrealized dream. It is further testified
by the witness that within the area designated by the letters,
"E-F-G-H" on the plan, and designated by the word "woods,"
on said plan, there were no inhabitants, that half of said
location was swamp lands not under cultivation, and lying
between the public road and the line running east and west ,
designated by witness under the letters "I-J."

The remainder of this section was shown to be
composed of sand hills, resulting from crevasses, uninhabited,
and though capable of drainage, as yet, in no way improved.
Though frequently questioned as to witness's knowledge of the
population in the various sub-divisions of the entire proposed
extension, he was unable to venture even a guess, though he admitted that the present population of Westwego was about 1500
people, but seemed entirely ignorant as to the number of people
proposed to be added to this population, by virtue of the extension. As the Mayor of the Town at the time of the ordinance,
it is reasonable to suppose that had the population of this
proposed extension been of any consequence in number, that this
witness, above all others, would have been advised definitely
on this subject. He finally admitted that the new area proposed is very sparsely settled. Further testifying, we learn
from this witness that the Town itself, has no Board of Health
nor any police force, other than a paid Town Marshal and a few

6

deputies, all of whom are unpaid, and no fire department, no commission for roads, all of which are well-graveled, and supervised by the Town Marshal only, that no tax is paid, nor any assessment of any kind for keeping up the streets in the Town of Westwego, the expenditures made by the Town in the year 1920, being some $6,000 for improvements, but not extensions of roads, these expenditures appearing to be for the particular improvements, and not as an annual or budgeted expense. Witness in conclusion admits that there are no industries within the proposed area but the two large plants belonging respectively to the Kentucky Distillery and Warehouse Company, and The Southwestern Land & Turpentine Company. This witness taking the stand again, testifies in direct examination on behalf of defendant, concerning various photographs offered by him, numbering from 1 to 12 inc., and introduced for the purpose of showing particularly the nature and location of structures, or buildings from the new Catholic Church, in square No. 4, on the plot offered, up to, and including the home and dairy of Barbe and Louis Saurage's property, the buildings on Robert Cline's property, and those of the industrial plant of the Southwestern Land & Turpentine Company. These last three pictures, to wit: No. 7 - 8 and 9, as well as the pictures No. 4 and 5, concerning the Sharp and Batley properties, showing conditions in that part of the new or proposed extension situated about a mile from the present boundaries of the town of Westwego. Between the houses shown on picture No. 10, known as "Sharp's Quarters," and the section on the plot described as B-C-D-C, there is nothing but the swamp or sand hills embraced within the section described on said plot as "woods." Examination of the buildings in pictures Nos. 2-3-4-5-6-7-8 and 10, do not show in the evidence, a thickly populated district, but, on the contrary, show merely vacant lots and large open country,

while in picture 10, there appears nothing but a number of cheap Negro quarters, usually found contiguous to a plantation.

Victor A. Petrie, who appears to have qualified as Mayor of the Town of WestWego just a week before testifying,and from the evidence appears to be the largest individual owner of rental property in the Town, swears that there are no more lots for sale, "not one," and that he had many applicants for all the rental property belonging to him, all of which was occupied. He lays stress upon the fact that Miss Beattie has a fine residence, and two or three other fine residences are in the neighborhood, and that Mr. Sharp has a few common buildings, and that there are a few factories in that section of the land sought to be annexed, that, as a member of the School Board he confirms the allegation, or contention of defendants, that there has been located a site for the new high school about a block or two from the Church shown on the map as being in square 4. His testimony in chief, is decidedly partial to the proposed annexation, though his reasons for the same are not convincing; in fact, on cross-examination, he admits that there is room for expansion on all the space, or section, embraced in the plotted lots Nos. 4 to 22, shown on the map, but gives as explanation why such lots are not available for expansion, that no one wishes to go back in the woods, and yet, it is plain from the examination of the plot or map, that all of these lots are the ones most contiguous to, and lying directly east of the present Town of Westwego. When shown the photograph offered by plaintiff, marked P-22, which, upon examination, clearly discloses the large vacant portion of ground presently within the Town limits, and not built upon nor occupied, he was forced to admit that his original statement of there being no available lots or building space in the Town of Westwego was not correct. Many other witnesses testifying for defendant, state that there is a large amount of vacant ground presently in the Town of Westwego. Such testimony justifies the belief that extension of territory for

8

the purpose of progressive development of he Town is not necessary, but that same might not be declared wholly unreasonable if the extension was planned to embrace only lots 4 to 22 inclusive, lying presently next to the east side of the Town, between the Mississippi River and the rear drainage canal shown on the map; but the extensions are made to reach much farther than behind these, as yet unoccupied plotted squares, up to a point a mile or more to the east, and embracing, (as several witnesses have testified) an area almost ten times greater than the present Town itself, the additional area being estimated by the engineer making the official map now before us, at 585.74 acres, as against only 60 acres comprising the business and residential Town of Westwego as presently constituted. One half of these additional acres is, (as previously stated) swamp land, and uninhabited, and the other half sparsely settled, mostly agricultural and pasture land, with a population of not more than 150 people, consisting of a few white families, and the remainder Negroes. It is shown that at least 220 acres of the proposed extension is swamp and uninhabited, in fact, one of the witnesses for complainants, and owner of "Sharp's Quarters," who is a man sixty years of age, has lived nearly all of his life in the area under consideration, swears that 70 acres of the proposed extension within the areas designated by C-F-G-H-Q, may be called good land, but the balance, of some 330 acres, is wholly swamp, or undrained land. This same witness, who lives in the present Town of Westwego, swears that there are several good vacant lots within the Town, as presently constituted, and that same are now in weeds and grass.

Another witness, Robert Klein, on behalf of complainants, fifty-five years of age, and who has lived in the territory sought to be annexed all of his life, testifies in confirmation of Sharp and others, that two thirds of the land sought to be annexed is swamp, and that only twelve or thirteen white families live there, and some Negroes. He further swears that the Town of Westwego, as presently constituted, has no fire

9

department, water works, sewerage and water, or lighting system, nor police protection, except the Town Marshal and some few deputies, and all of these facts concerning the status of the land to be annexed, as well as the equipment of the land presently constituting the Town, is verified by another witness, Mr. Leo A. Marrero, president, or acting president, of the Marrero Land & Improvement Association. This last named witness is specific on the point that the present Town of Westwego is in no position to offer water works, sewerage or electric lights, and that the new water works plant cannot be financed under present conditions. The testimony of the ex-Mayor of Westwego, Mr. Buchler, shows, among other facts, that he and those advocating the ordinance, believe it particularly advantageous and necessary to include the Kentucky Distilleries & Warehouse Plant in the new extension, because of the temporary disturbance incident to the $40,000 theft of alcohol, occurring shortly before the passage of the ordinance, and thus establishing grounds of belief that this industry should be given police protection. The testimony of Mr. W.B. O'Neil, the manager of the Distilleries, shows that this particular incident was one in which some of the inhabitants themselves, of the present Town of Westwego, and none of the inhabitants of the district proposed to be annexed, were participants in the theft referred to. This latter witness further testifies that the plant has no need of police protection, that it has within its own plant all light and water necessary. Mr. O'Neil, on behalf of the Distilleries Company, and Messrs. Marrero and Sharp, all of whom respectively represent three of the complainants in this action, are uniform in the statement that they would consent to the annexation proposed, and the resultant burdens of Town-taxation, if any correspondent benefits to them could be shown and assured.

It needs but a casual glance at the two aeroplane pictures filed in evidence, to convince us that the proposed annexation, nearly all of which is shown in these two pictures, is but sparsely settled, and largely suited to but agricultural

10

and to farming pursuits. The two industries in these pictures, to wit, that of the Southwestern Land & Turpentine Company, and the Kentucky Distilleries and Warehouse Company, are surrounded on all sides by bushy, though high-grade land, showing little, if any residential or town-like surroundings. The large map in evidence clearly locates the Kentucky Distilleries & Warehouse Company, as being nearest to the present Town limits, while a large tract of land separates it from the Buckner-Chipley tract of land, occupied by the aforesaid Turpentine Company. Neither one of these industrial plants are shown by witnesses for defendant, to be in need of any water works, electric light, drainage, sewerage, or police advantages, which the officials of the Town of Westwego as now constituted, would proffer them as benefits which they could not hope to enjoy unless included within the jurisdiction, or under the management of the Town. It is shown that the Kentucky Distilleries is presently, and has for some time back, been shut down, the plant not being under operation, and that such was its condition at the time of the passage of the ordinance. Defendants' own expert witness, Mr. Payne, is shown to have been employed for advice as to the best location of the proposed water works, and instead of locating same at the point "X" on the map, as proposed by witness Buchler, this expert states that he recommended the location of the same within the present Town limits, in square 2, and between Avenues A and B, and that he estimates the cost of a proper water works system, to meet the requirements of fire prevention bureau, and filteration plant, would be some $94,000, an amount quite out of the reach presently, of the financial powers of the Town of Westwego. This same witness, on cross-examination, states that his estimate for a water works system costing $94,000, if estimated to include the new or proposed extension, would cost considerably more, possibly as much as an additional 50,000 dollars. It is further stated by this witness that the lands in the wooded area shown on the map could be drained and cleared and made available for residential purposes, but admits that to clear the same would cost about $100 an acre, and to grub

the swamps and rid the land of weeds and roots, would cost about 500 dollars an acre, all of this land being termed by the witness as "ordinary Louisiana swamp."

It has appeared to the judge of the Trial Court, who, in his reasons for judgment, states he has personally inspected the territory to be included in the extension, that the ordinance is reasonable, because of the fact that the proposed extension, at least that part known as Marrero land property, and the property of Mary Beattie, are already sub-divided into lots now selling at an average of $260 per lot (30' x 120'). If this land, sub-divided into lots was contiguous to the present town and town lots of Westwego, it might be considered reasonable to take in such territory and to assume that these newly acquired or included lots would unite with the larger corporation in making a homogeneous town, but the Beattie sub-division is shown to be widely separated from, and in the lower extreme eastern part of the proposed annexation, with no probable benefits of local government to be derived by the new territory, from the present territory. In relation to a similar situation, it has been stated that "when actual unity is impracticable, legal unity should not be attempted." Vestal vs. Little Rock, 15 S. W.,891. In McQuillin on Municipal Corporations, Vol. 1, Par. 276, the text writer comments as follows:

> "Several tracts may be an-
> nexed as being contiguous, if
> one is contiguous to the muni-
> cipality, and the other tracts
> are contiguous to each other."
> Catterlin vs. Frankfort, 87 Ind.45.

Another reason given by the Judge of the Lower Court is that the new Catholic Church, at which the people of the Town worship, now situated outside of the present Town limits, would be included in the extension. This, of itself, would be no reason for the extension, inasmuch as the Church cannot, of itself, return benefits to the Corporation through taxation, and as a fact, the evidence shows that the location of the Church is within square 4, directly contiguous to the

12

central, or near central part of the present Town, and ~~that~~
for this reason, inclusion or not, of the Church, would not
materially help or benefit those within or without the present
Town limits. It is further found as a reasonable ground for
inclusion, that the site of the new proposed high school, which
is already purchased by the School Board, and which is located
some distance east of the Church, and opposite square No. 29
on the plot, would be a considerable advantage to the new, as
well as to the old Town. The school building is not, under
present conditions, a municipal building, but a parish or
district school building, and its functioning is not dependent
upon the proposed annexation. It is noted in the reasons for
judgment, that a small portion of the land in the proposed ex-
tension, is used for agricultural purposes, and that the great
bulk of the land remains idle except as used for pasture purposes.
Unless it can be shown (and the aeroplane pictures show to the
contrary) that this large bulk of land is available for town
purposes, we are inclined to respectfully differ from our
brother of the Lower Court, in finding this as a reason for
expansion of the present Town of Westwego. While it is further
noted in the opinion that the swamp land will, in the future,
be easily drained, we find, on closer examination of the evidence,
on this point, that such facilities are not to be hoped for,
nor easily, nor inexpensively obtained in the near future. We
do not find from the evidence, as stated in the conclusions of
the Court, that the Town of Westwego is presently congested to
any such extent as would justify the expansion of this Town
a mile or more east of its present situation, especially when
such a tract of land as is embraced in square 4 to 22, imme-
diately contiguous to the present Town, is not, as yet, oc-
cupied for residential or industrial purposes.

Counsel for defendant urges our particular at-
tention to the ruling made in Lawrence v. Town of Mansfield,
129 La. 672. We have carefully examined the opinion of the
Chief Justice upon the merits of this case, and find nothing
therein said by the Supreme Court which in any way opposes
13

the views we would adopt here.  In the Mansfield case, the higher Court found (as we cannot in this case) that the testimony was about equally divided, upon which the question, vel non, of reasonableness of the ordinance could be decided, and laid down the doctrine that in order to characterize the measure of a body as unreasonable, it must be made to appear by abundant evidence that it is unreasonable.  This is but another method of declaring that in cases arising under Act 136 of 1898, the burden of proof as to the ordinance being or not being reasonable falls, in each case, upon the petitioners in appeal, that is, upon complainants.  The convincing evidence of every witness for the petitioners herein - coupled with and fortified by the record admissions forced, in cross-examination, upon the witnesses for defendant,- establishes conclusively that the burden required in the Mansfield case has been fully carried by the complainants now before us.

In Railroad Co. vs Town of Vadalia, 117 La. 562, the Supreme Court did not reverse the lower court on the question of the reasonableness of the ordinance, but upon the question of the constitutionality of Act 136. of 1898, and after finding the Act constitutional, it was then decided upon the merits of the case, established upon circumstances wholly different from those arising in the instant case, that the Railroad's contention that the ordinances were unreasonable, were insufficiently supported by the evidence.

Analysis of the case of State v. Mayor of Dodson, 123 La. 904, shows no similarity whatever to the facts before us. But in said case, as well as the Vadalia case, there can be no doubt that the Supreme Court has decreed that under the statute the functions delegated to municipal authorities invested by the act with power to exert their judgment and discretion on matters of town extensions, etc., are in their nature judicial, rather than legislative.  This being the interpretation given to the Statute. it is not difficult to see the wisdom of our courts in

14

holding as shown in the Mansfield decision, that the burden of disproving the reasonableness of a quasi judicial body's action, should fall upon those challenging the same. As said above, the petitioners in the instant case have successfully carried this burden.

In the case of Bowman Hicks Lumber Company, et al., v. Town of Oakdale, 144 La. 849, it is true that the Supreme Court affirmed the judgment of the Lower Court, maintaining the reasonableness of the ordinance, and also in that case, as in this one, the Judge, a quo, had inspected personally the proposed extension, giving to the appellate court the benefit of his views in a well-considered opinion. The printed report of this decision is of value in enabling us to compare that case with the one before us for consideration, for the particular reason that on page 851 of the report, there appears a map showing definitely the fact that all of the properties of the four several complainants were immediately contiguous to the Town of Oakdale, and that the nature of the business, which was the manufacturing of lumber, required large quarters in connection with each of the plants, or lumber yards, and mills, a fact which naturally resulted in almost completely surrounding the Town of Oakdale with labor and like grades of employment, creating settlements of people in large numbers, who were not amenable to the police, health or other control of the Town which these mill-yards and quarters encircled. The facts are shown further, that in the Oakdale case the contemplated additions, running in four directions would have done nothing more than double the area of the Town site, whereas in the instant case, as heretofore noted, it was shown that the increased area would be almost ten times that of the Town of Westwego.

McQuillin on "Municipal Corporations," discusses the rule of reason, which should apply in cases of addition or reduction of municipal boundaries, as follows:

Vol. 1, Par. 274; p. 621.
"As a general proposition, the reasonableness of the extension must be determined by the circumstances existing at the time of the proceeding xxxxx.
15

In determining the reasonableness of the extension of corporate boundaries, the extension must be considered as a whole, the question is not whether it is reasonable in each and every part."

Par. 275:

"The extension is not unreasonable if the territory embraced is nearly all improved and necessary for municipal purposes. But if the territory is sparsely settled, situated remotely from the thickly settled portion of the municipality, and would receive no advantage or benefit from the extension, but would be burdened with additional taxes, and the residents of the territory prefer to remain without the municipality, it should not be annexed." Orlando vs. Orlando Water & Light Co.,39 So. 532, Supreme Court of Florida.

Par. 278:

"As the territory of a municipal corporation is usually divided into lots and blocks, and the residents do not depend on the cultivation of the soil for a livelihood, it is not the policy of the law to annex large tracts of agricultural lands.to a municipality, unless under the circumstances of the particular case, they should be included, for instance, if they should be needed for city purposes.

Farm lands which would derive no material benefit from being included within the boundaries of a municipal corporation, and which would be burdened with additional taxes, and which are not needed for municipal purposes, should not be annexed."

In the case just cited, the allegations of the petition objecting to annexation were, in effect, that the district supposed to be annexed was sparsely settled, that less than ten registered voters lived therein, that it was remotely situated from the thickly settled portion of the city to which it was to be annexed, that the objectors would receive no advantage of light or police protection, that in no way was it advantageous, but would be a burden resulting from additional taxation, and that the

16

residents, or objectors, preferred to remain in the country. All, or at least a large majority, of the above objections apply to the case under our consideration, from the facts as shown. In Town of Latonia vs. Hopkins, 47 S. W. 248, denying the right of annexation, it was ruled that the Court should be satisfied that the adding of the territory to the Town would be for its interest, and would cause no material injury to the persons owning real estate in the territory to be annexed, and in this case the court found facts quite similar to those under consideration, it appearing from the evidence, that out of 1050 acres, of which 600 acres had been put into lots by a syndicate, scarcely any streets had been laid out in said portion, and that there were houses on only about one in ten of said lots, the balance of the 600 acres being used for agricultural purposes, never being platted.

In the Latonia case the Court said:

"In our opinion, it would not be of benefit to the Town, itself, to annex such a vast scope of territory, as it would impose upon the municipality the Herculean task of providing side-walks, lights, and other necessities of municipal existence."

The plan which has as its objective the purpose alone of increasing the income of a municipality, does not square with reason or justice, when opposition based upon conclusive evidence of disadvantage to the territory and its inhabitants sought to be annexed, is presented, as in this case. The rule laid down by the Supreme Court of Mississippi, in the case of Forbes et als., vs. Mayor, etc., City of Meridian, reported in the 58 Southern Reporter, 676, is most applicable to the facts as we understand them in this case, and we quote that portion of the opinion found in the brief of counsel for complainants, as follows:

"The power of extending corporate limits is granted, not to be resorted to for the purposes alone of increasing the income of the municipality, but in order that the benefits incident to Civic Government may be extended to those residents in the territory

17

adjacent to the municipality
and included in the extension;
and, further, that the muni-
cipality, by extending its
police government, its sanitary
and quarantine regulations,
and its more adequate fire
protection, may thereby con-
serve the best interests of
the inhabitants within its
original borders, and also
give to those living in
the territory included in
the extension more effi-
cient protection against
devastation by fire and the
enforcement of necessary
sanitary regulations to
public health, decrease the
danger from disease and
pestilence. These are the
paramount considerations, and
incidental to these, the
citizens included in the ex-
tension are entitled to share
in common with the other
inhabitants of a municipality,
the convenience of sidewalks
and lighted streets, fire
protection and all other
advantages of city life."

Of course, innumerable authorities may be

weighed on either side of this question, but it is one that must

be decided under the circumstances applicable to each case. What

may, or may not be reasonable, depends entirely upon the situations

and surroundings presenting themselves in the particular case

under which the question is to be determined. In "Words and

Phrases": "The word 'reasonable' is a term difficult of defi-

nition, and usually it must be considered with the facts of the

particular controversy in determining its force and latitude.

See 33 Cyc. 1560. "Reasonable: A generic term difficult of

adequate definition; a relative term, to be determined according

to the circumstances of the case."

For the reasons herein set forth, we are of the

opinion that the law and the evidence in this case is in favor

of plaintiffs and appellants herein, that each and all of the

objections set forth in their petition, are well founded, and

that the ordinance as adopted by the Town of Westwego on the

30th day of December, 1919, proposing extension of the corporate

18

limits of said town, is not reasonable, and should be set aside. It is therefore ordered, adjudged and decreed, that the judgment herein of the 28th judicial district court for the Parish of Jefferson, herein appealed from, be annulled, voided and reversed, and that the ordinance above mentioned be, and the same is hereby vacated, defendant herein to pay all costs of both courts.

JUDGMENT REVERSED.